IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TERESA ANN ESTRADA, | ) | 4:13CV3121 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this social security appeal, plaintiff Teresa Ann Estrada ("Estrada") argues that the Commissioner of Social Security committed reversible error in determining that she is not entitled to disability insurance and supplemental security income benefits. For the reasons discussed below, the Commissioner's decision is affirmed.

## I. BACKGROUND

On March 16, 2011, Estrada filed applications for disability insurance and supplemental security income benefits. (Tr. 9, 117-29.) In her applications, Estrada alleged that she has been disabled since December 31, 2008. (Tr. 13.) Estrada's application was denied initially and on reconsideration. (*Id*.) On May 17, 2012, an administrative law judge ("ALJ") issued a decision finding that Estrada was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 9-19.) In his decision, the ALJ followed the five-step sequential analysis prescribed by the

Social Security Regulations to evaluate Estrada's disability claim.[1]  *See* [20 C.F.R. §§ 404.1520](), [416.920](). The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since December 31, 2008, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.871 *et seq*.).

3. The claimant has the following severe impairments: disorders of the back, obesity, degenerative joint disease in the right knee, and a history of bone spurs in the feet (20 CFR 202.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

---

[1]The Social Security Administration uses a five-step process to determine whether a claimant is disabled. These steps are described as follows:

At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the [residual functional capacity] to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*[Gonzales v. Barnhart]()*, 465 F.3d 890, 894 (8th Cir. 2006).

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), in that, she can lift and carry 10 pounds frequently and 10 pounds occasionally, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Any job must allow for the claimant to alternate between sitting and standing up to every 30 minutes as needed. The claimant also has the following nonexertional limitations that further limit her ability to perform light work: can occasionally climb ramps or stairs, but should never climb ropes, ladders, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; should avoid prolonged exposure to cold temperature extremes and vibrating machinery; and should avoid unprotected heights and hazardous moving machinery. Secondary to reported chronic pain, the claimant is limited to jobs that do not demand attention to detail or complicated job tasks/instructions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 13, 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exit in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.964(a)).

11. The claimant has not been under disability, as defined by the Social Security Act, from December 31, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-19.) After the ALJ issued his decision, Estrada filed a request for a review with the Appeals Council of the Social Security Administration. (Tr. 1-5.) On April 23, 2013, the Appeals Council denied Estrada's request for review. (*Id.*) Thus, the ALJ's decision stands as the final decision of the Commissioner of Social Security.

## II. STANDARD OF REVIEW

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. See *Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992). Issues of law are reviewed de novo. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995).

## III.  DISCUSSION

A.  **Relevant Medical History and Opinions**

In her Disability Report, Estrada alleged that bone spurs and a "bad back" were the physical conditions that limited her ability to work. (Tr. 173.) However, Estrada's medical history also reveals a history of sinus problems and obesity.

On April 24, 2009, physician's assistant Kimberling Cody ("Cody") examined Estrada for complaints of a moderate cough and general chest soreness. (Tr. 267-29.) Cody noted that Estrada was a smoker, instructed her not to smoke, and prescribed an inhaler, Robitussin, and Doxycyline. (Tr. 268.)

On March 19, 2010, Dr. Leland Lamberty ("Lamberty") examined Estrada for complaints of a swollen neck, lightheadedness, and a "funny" feeling heart. (Tr. 285.) During the examination, Estratda stated she was working six days a week. (*Id*.) Dr. Lamberty opined that Estrada's symptoms were likely caused by stress and her long-term smoking habit. (*Id*.)

On April 14, 2010, Estrada returned to Dr. Lamberty with a sore throat, body aches, and a cough. (*Id*.) Dr. Lamberty prescribed medication. (*Id*.)

On May 29, 2010, Dr. Lamberty again examined Estrada for complaints of a swollen throat and requests to refill medication for back pain. (*Id*.) Dr. Lamberty noted that Plaintiff smoked less than one half of a package of cigarettes each day, but she had smoked for 20 years. (*Id*.) Dr. Lamberty refilled her pain medication and stated they would do a "Medrol Dosepak" to see if it would help alleviate her sense of neck fullness. (*Id*.)

On March 18, 2011, Dr. Lamberty examined Estrada for complaints of neck fullness, hoarseness, and lightheadedness. (Tr. 266, 284, 300, 304.) A computerized

5

tomography ("CT") of Estrada's neck showed "sinus disease" and an enlarged lymph node. (Tr. 266, 284, 288, 300, 304.)

On April 18, 2011, Dr. Lamberty examined Estrada for complaints of flu symptoms, sinus issues, and difficulty swallowing. (Tr. 299, 303.) A diagnostic imaging report indicated that Estrada had low-grade chronic sinusitis. (Tr. 302, 306.)

On May 4, 2011, David Lindley, M.D., conducted a consultative examination of Estrada. (Tr. 311-15.) During the examination, Estrada stated she had experienced back pain for more than 20 years and that it recently had increased. (Tr. 311.) Estrada also complained of numbness, burning between her thighs, and shooting pains down to her feet. (*Id.*) Estrada stated she could lift a gallon of milk, sit or stand for 20 minutes at a time, and walk half a block. (*Id.*) Estrada reported that she had not worked full-time for approximately two years, but that she still shopped for groceries for one of her clients. (Tr. 312.) Dr. Lindley noted that Estrada had reduced range of motion in her back, hips, and neck. However, her muscle tone, power, and coordination were generally intact. (Tr. 308-09, 314.) An x-ray of Estrada's spine indicated degenerative disc disease. (Tr. 314.) Dr. Lindley opined that Estrada's medical conditions would make it difficult for her to hold a full-time job. (*Id.*)

On May 12, 2011, Jerry Reed, M.D., conducted a physical residual functional capacity assessment of Estrada. (Tr. 316-23.) Dr. Reed concluded that Estrada could occasionally lift 20 pounds, frequently lift or carry 10 pounds, stand or walk (with normal breaks) for a total of six hours in an eight-hour workday, and sit for about 6 hours in an 8-hour workday. (Tr. 316-17.) Dr. Reed concluded Estrada could occasionally climb, balance, stoop, kneel, crouch or crawl, but must avoid concentrated exposure to extreme cold, vibration and hazzards (machinery, heights etc.). (Tr. 318, 320.) A. R. Hohensee, M.D. ("Hohensee"), reviewed all of the evidence used by Dr. Reed and affirmed his findings. (Tr. 328.)

On June 2, 2011, Todd Jensen, M.D., examined Estrada for complaints of back pain. (Tr. 412-15.) Estrada described the pain as "moderate" in the area of her mid lumber spine and lower lumbar spine. (Tr. 412.) Estrada stated that she had back pain for "many years" but had recently "turned" in the shower and increased her pain. (*Id*.) Estrada said she may have recently injured her back after "lifting and turning" (*Id*.) Dr. Jensen prescribed medication to address Estrada's pain, instructed her to apply ice for 15 to 20 minutes four to six times a day, lift no more than 10 pounds, with no bending, stooping, prolonged sitting, or strenuous activity, and to rest until she was feeling better. (Tr. 414.)

On August 10, 2011, Deb Weaver, M.D., examined Estrada for complaints of back pain. (Tr. 406-07.) Estrada described her pain as "moderate" in the area of her lower lumber spine and radiating through her hips to her knees. (Tr. 406.) Dr. Weaver's examination of Estrada's back was "normal" with some muscle spasms in the left and right posterior. (Tr. 407.) Estrada's extremities were nontender and she exhibited normal range of motion. (*Id*.)

On December 23, 2011, Estrada returned to Dr. Jensen with complaints of chronic back pain. (Tr. 437-39.) Estrada stated her pain was "severe" in her lower lumbar spine. (Tr. 437.) Estrada reported that she had been working with the elderly and "did too much." (*Id*.) Dr. Jensen's examination revealed that Estrada had tenderness in the lumbar spine and that a muscle spasm was present. (Tr. 438.) Dr. Jensen discharged Estrada in "improved condition" and instructed her to apply ice for 15-20 minutes 4-6 times a day and to limit lifting. (Tr. 437-38.) Upon discharge, Estrada rated her pain a "3" out of 10. (Tr. 441.)

On January 17, 2012, Renee Angler, M.D., examined Estrada for complaints of a cough, sinus pain, fever, and chills. (Tr. 428-31.) Dr. Angler instructed Estrada to take Acetaminophen or Ibuprofen as needed for fever, not to work for three days and to drink plenty of fluids. (Tr. 431.)

On February 11, 2012, James Smith, M.D., examined Estrada for complaints of pain in her right knee after a "twisting injury." (Tr. 422-24.) Dr. Smith applied a splint and advised Estrada to see a pain management specialist regarding her chronic back pain. (Tr. 423.)

**B.     Hearing Testimony**

On May 2, 2012, Estrada testified at a hearing before an ALJ. (Tr. 25, 29-41.) Estrada testified that she completed the twelfth grade, currently lived with her boyfriend, and was raising her six-year-old granddaughter. (Tr. 29-30.) Estrada testified that she stood five feet, eight inches tall and weighed approximately 300 pounds. (Tr. 29.) She said she smoked about 12 cigarettes a day. (Tr. 30.) During her alleged period of disability, Estrada said that she worked as an in-home health aide, but that she earned less than $600 per month. (Tr. 31.) She reportedly last worked as an in-home health aide in February or March of 2012. (Tr. 32.) However, she stopped working as an in-home health aide because she tore her medial collateral ligament in her right leg and could no longer lift people, help them into the tub, or dress them. (Tr. 31-32.) Estrada testified about her physical problems at the time of the hearing, which included back pain, bone spurs on her feet, and burning sensations and numbness in her legs. (Tr. 32, 39.) Estrada stated she could stand or walk for no more than 10 to 15 minutes at a time and sit or lie down for no more than 10 to 20 minutes at a time. (Tr. 34, 35.) Estrada stated that she could wash dishes, cook meals, help fold laundry, and shop for groceries with assistance. (Tr. 34, 36.)

A vocational expert also testified at the hearing. (Tr. 41-47.) The ALJ asked if any occupation existed in significant numbers for a hypothetical person of Estrada's age, education, and work experience who could lift and carry 20 pounds occasionally, 10 pounds frequently, stand, walk, or sit for six hours of an eight-hour day, and alternate between sitting and standing every 30 minutes as needed. (Tr. 44-45.) The ALJ specified that the individual could occasionally climb stairs, but should never climb ropes, ladders, or scaffolds.  The hypothetical person could occasionally

8

balance, stoop, kneel, crouch, or crawl, but should avoid prolonged exposure to temperature extremes, vibrating machinery, unprotected heights and hazardous moving machinery. (Tr. 44.) The ALJ also indicated the individual should not perform work that demands attention to detail or complicated job tasks or instructions (Tr. 44). The vocational expert responded that the individual could perform work as an arcade attendant (41,200 jobs nationally and 120 jobs in Nebraska); storage facility rental clerk (32,000 jobs nationally and 180 jobs in Nebraska); or parking lot attendant (6,800 jobs nationally and 120 jobs in Nebraska). (Tr. 45.)

**C.     Estrada's Arguments on Appeal**

In her appeal brief, Estrada argues that the ALJ's opinion is not supported by substantial evidence because the ALJ did not discuss (1) the specific facts that would support a denial of benefits, (2) take all the medial evidence into consideration, and (3) include all the medical facts in the hypothetical question to the vocational expert. (Filing 14 at CM/ECF pp. 4-14.) The Commissioner contends that the ALJ's decision is supported by substantial evidence. (Filing 21 at CM/ECF pp. 9-19.) I agree with the Commissioner.

*1.     Discussion of Facts*

First, Plaintiff argues that "the ALJ did not discuss the specific facts which would support a denial of benefits." (Filing 13 at CM/ECF p. 4.) In support of this argument, Plaintiff cites to *Fulfer v. Astrue*, 917 F. Supp. 2d 883 (E.D. Wis. 2013). In *Fulfer*, the ALJ determined that Mr. Fulfer's condition did not satisfy Listing 1.04, specifically stating:

> No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. Specifically, the undersigned has considered the claimant's lumbar spine disorder under Listing 1.04 concerning vertebrogenic disorders but concludes that the claimant's condition does not satisfy the severity requirements of this

9

listed impairment, as the record does not document neurological abnormalities, such as motor loss, sensory loss or muscle weakness.

*Id*. at 886. The court stated this discussion was far too general and it was "obliged to conclude" that the ALJ failed to build an accurate and logical bridge between the evidence and his conclusion. *Id*.

In contrast to *Fulfer*, the ALJ in this case did discuss the medical opinions in the record in reaching his residual functional capacity finding. (Tr. 11-19.) The ALJ's opinion includes an extensive discussion of Estrada's subjective complaints, self-reported activities, treatment notes, opinion evidence, medical history, and credibility factors. (*Id*.) The ALJ even considered Estrada's medical records regarding her sinus issues, though she did not allege any limitations based on a sinus condition in her application or during her hearing. (Tr. 12, 25-47, 173.)

    2.    *Medical Evidence*

Second, Plaintiff appears to argue that the ALJ failed to consider all of the medical evidence or substituted his own judgment in place of the medical evidence. (Filing 14 at CM/ECF pp. 3, 6-8.) "ALJs bear the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). The residual functional capacity must be supported by "at least some medical evidence." *Id*. (internal quotation omitted).

Here, the ALJ's evaluation of the medical evidence was consistent with the Commissioner's regulations and policies. *See* 20 C.F.R. §§ 404.1527, 416.927 (explaining the factors an ALJ considers in evaluating opinion evidence). The record before the ALJ contained opinion evidence from consultative state agency physicians Dr. Reed and Dr. Hohensee and opinion evidence from consultative examining physician Dr. Lindley. (Tr. 16, 308-09, 311-24, 328.) The ALJ clearly described the

weight that he assigned to each medical opinion in determining Estrada's residual functional capacity. (Tr. 16.)

The ALJ assigned "significant weight" to Dr. Lindley's examination findings, which indicated that Estrada had reduced range of motion in her back, hips, and neck, but her muscle tone, power, and coordination were generally intact. (Tr. 16, 308-09, 314.) However, the ALJ assigned "minimal weight" to Dr. Lindley's conclusory opinion that it would be "difficult for [Estrada] to hold down a full-time job." (Tr. 15, 16, 314.) Indeed, such an assignment was appropriate because the ultimate question of whether Plaintiff is disabled is an issue reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling (SSR) 96-5p; *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."). The ALJ explained that Dr. Lindley's opinion about Estrada's work appeared to be broad and based on Estrada's subjective complaints that she could not lift more than one gallon of milk, walk more than one-half block, and sit or stand more than 20 minutes at a time. (Tr. 16, 311.)

The ALJ also properly assigned "significant weight" to the opinions of Dr. Reed and Dr. Hohensee. (Tr. 16, 316-24, 328.) Dr. Reed concluded that Estrada could occasionally lift 20 pounds, frequently lift or carry 10 pounds, stand or walk (with normal breaks) for a total of six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (Tr. 316-17.) Dr. Reed concluded Estrada could occasionally climb, balance, stoop, kneel, crouch or crawl, but must avoid concentrated exposure to extreme cold, vibration and hazzards (machinery, heights etc.). (Tr. 318, 320.) Dr. Hohensee reviewed all of the evidence used by Dr. Reed and affirmed his findings. (Tr. 328.)

### 3. *Hypothetical Question*

Last, Estrada generally argues "[i]t is obvious that the ALJ's hypothetical question to the vocational expert did not include all of the medical facts reflected in the testimony of the claimant and the medical records." (Filing 14 at CM/ECF p. 13.) Although Plaintiff does not specify what "medical fact" the ALJ excluded, she cites to *Friesmuth v. Astrue*, 920 F. Supp. 2d 943 (E.D. Wis. 2013). In *Freismuth*, te medical record included numerous opinions that the claimant would need frequent breaks. *Id.* at 953. However, the ALJ's hypothetical question to the vocational expert failed to include limitations for frequent breaks. *Id*. In contrast to *Freismuth*, the ALJ's hypothetical question to the vocational expert in this case did include a limitation for breaks consistent with the ALJ's determined residual functional capacity assessment:

> Q   Okay. I'm going to present you a couple of hypothticals. The first one: Assume we have an individual of the same age, educational background as the claimant with the same work history. For the first hypothetical, assume that she retains the capacity to lift and carry 20 pounds occasionally, 10 pounds frequently; walk or stand six of eight hours; sit for six of eight hours. She could occasionally climb stairs. She probably should never climb ropes, scaffolds, or ladders; occasionally balance, stoop, crouch, kneel, and crawl. She should avoid prolonged exposure to extreme cold temperatures and vibrating machinery. She should avoid unprotected heights and hazardous moving machinery. She would be limited to jobs that would allow her to alternate between sitting and standing as needed. In addition, she would be limited to jobs that do not demand attention to details or complicated job tasks or instructions. Could this person return to her past relevant work?
> A   No sir.

12

      Q      Would you be able to identify other jobs in the local, national, or regional economy this hypothetical person could perform?

      A      When you say alternate sit/stand as needed, that eliminates all work in my opinion.

      Q      Okay. Well, what if we put that at 30-minute periods?

      A      30-minute--okay. That's my–

      Q      No more than 30-minute periods.

      A      Yeah. That's my break right there. So yes.

      Q      It wouldn't be every 30 minutes, but if she needed to

      A      Right, Right

      Q      – she could to it –

      A      Okay

      Q      Arcade attendant with a DOT of 342.667-014. It's a light, SVP of 2. There are 120 jobs in Nebraska; 41,200 in the nation.

      Storage facility rental clerk with a DOT of 295.367-026. There are 180 jobs in Nebraska; 32,000 in the nation.

      Parking lot attendant with a DOT of 915.473-010. Also light, SVP of 2. There are 120 in Nebraska; 6,800 in the nation.

      Q      Okay. Now just so I'm clear: If I was to find that this claimant was limited to a range of sedentary work, there would be no jobs transferrable--no transferable skills and no jobs at sedentary; is that correct?

      A      That's correct.

(Tr. 43-45.)

      In short, because the ALJ's residual functional capacity finding was supported by substantial evidence, it was proper for the ALJ to consider vocational expert testimony premised on the residual functional capacity finding.

13

## IV. CONCLUSION

For the reasons explained above, I find the ALJ's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

IT IS ORDERED that the decision of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g). Final judgment will be entered by separate document.

DATED this 20th day of August, 2014.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.